**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Wi-Tronix, LLC,<br>Plaintiff,<br>v.<br>Big Will Enterprises Inc.,<br>Defendant. | **Case No.:**<br>**VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT**<br>**JURY TRIAL DEMANDED** |

Plaintiff Wi-Tronix, LLC ("Wi-Tronix" or "Plaintiff") files this Verified Complaint for Declaratory Judgment of Non-Infringement and Invalidity of four United States Patents and for unfair business practices in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS 505/2SSS against Defendant Big Will Enterprises Inc. ("BWE" or "Defendant") and alleges as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory judgment of non-infringement and invalidity arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

2. BWE accused several customers of Wi-Tronix of infringing claims of U.S. Patent Nos. 8,452,273 ("the '273 Patent"), 8,559,914 ("the '914 Patent"), 8,737,951 ("the '951 Patent"), and 9,049,558 ("the '558 Patent") (collectively, the "Asserted Patents") through the customer's use of Wi-Tronix products and services, including the Wi-Tronix Violet Edge platform system. BWE has demanded that customers of Wi-Tronix either take a license and pay BWE a license fee, or cease their accused activities. Wi-Tronix seeks a declaratory judgment that it and its customers have not infringed and do not infringe the claims of the Asserted Patents and that those claims are invalid. True and correct copies of the '273 Patent, '914 Patent, '951 Patent, and '558 Patent are

attached hereto as Exhibits 1, 2, 3, and 4, respectively.

3. In general, Wi-Tronix's contracts with its accused customers include patent infringement indemnification clauses that potentially make Wi-Tronix liable to its customers for patent infringement through the customers' use of Wi-Tronix's products and services.

4. Wi-Tronix also seeks relief under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2SSS, because BWE sent several Wi-Tronix customers patent infringement demand letters ("Demand Letters") alleging that the customers' use of the Wi-Tronix Violet Edge platform system that the customers purchased from Wi-Tronix infringed the Asserted Patents. These Demand Letters that Wi-Tronix examined failed to provide concrete Violet Edge platform-specific factual allegations showing how the Wi-Tronix Violet Edge platform system functions or how Wi-Tronix's services or technology actually perform numerous limitations of the Asserted Patents or otherwise are covered by the claims of the Asserted Patents.

## PARTIES

5. Wi-Tronix is an Illinois Limited Liability Company with its principal place of business at 631 E. Boughton Road, Suite 240, Bolingbrook, Illinois 60440.

6. BWE is a Canadian company headquartered at 4573 West 1st Avenue, Vancouver, British Columbia V6R 1H7, Canada.

## JURISDICTION AND VENUE

7. This action arises under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

8. This Court has subject matter jurisdiction over Wi-Tronix's claims for declaratory judgment of patent non-infringement and invalidity pursuant to 28 U.S.C. §§ 1331 and 1338(a). The Court is authorized to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 since an actual and substantial controversy exists between the parties.

9. This Court has supplemental jurisdiction over Wi-Tronix's state-law claim in Count

IX pursuant to 28 U.S.C. § 1367(a) because that claim forms part of the same case or controversy as Wi-Tronix's federal patent law claims and arises from the same nucleus of operative facts, including BWE's Demand Letters and its assertion of the Asserted Patents against Wi-Tronix's customers.

10. This Court has personal jurisdiction over BWE consistent with the Due Process Clause of the United States Constitution and the Illinois long-arm statute, 735 ILCS 5/2-209. The alleged instrumentality identified in the Demand Letters received by Wi-Tronix's customers (i.e., the Violet Edge platform system) was conceived and designed in Wi-Tronix's facilities in Bolingbrook, Illinois in this Judicial District, and the contracts through which Wi-Tronix's customers acquired the alleged instrumentality were generated in Illinois. In addition, several Wi-Tronix customers who have received Demand Letters have sent copies of these Demand Letters to Wi-Tronix in Illinois and in this Judicial District. As a result of receiving copies of the Demand Letters, counsel for Wi-Tronix, also located in this Judicial District, has been in direct communication with counsel and with the licensing agent for BWE regarding the patent infringement issues raised in the Demand Letters. BWE has also directed substantially similar patent enforcement communications to other companies in this District, including rail industry participants located in this District.

11. Additionally, this Court has personal jurisdiction over BWE consistent with the requirements of the Due Process Clause of the United States Constitution and the Illinois long-arm statue because BWE has continuous and systematic business contacts in this District, has purposely directed its business activities at residents of this District, and has conducted business activities relating to the Asserted Patents in this District. On information and belief, BWE has intentionally directed its patent licensing and enforcement activities concerning the Asserted Patents toward companies having principal places of business and/or operations located in this Judicial District,

for example, Allstate Corporation and Allstate Insurance Company have corporate headquarters located in this District. BWE has intentionally conducted business in this District related to its patent enforcement activities by enforcing the Asserted Patents, and upon information and belief, additional BWE patents, and upon information and belief entering into patent license and/or settlement agreements with, for example, The Allstate Corporation and Allstate Insurance Company.[1] On information and belief, BWE directed numerous communications to this District for purposes of licensing either the Asserted Patents or other BWE patents with the Allstate Corporation and Allstate Insurance Company.

12. On information and belief, BWE's intentional business activities in this District also include deriving patent licensing and/or litigation settlement payments concerning the Asserted Patents from allegedly infringing activities occurring in this District. BWE has enforced or has attempted to enforce the Asserted Patents against, and, on information and belief, has entered into licensing and/or litigation settlement agreements with, the following entities that operate businesses in Illinois: Rivian Automotive, Inc.; Kia America, Inc.; Mitsubishi Corporation (America); Mitsubishi Motors North America; Enterprise Holdings, Inc., Loomis Armored US, LLC; Autozone, Inc.; Earnix, Inc.; Autoliv ASP, Inc.; The American Automobile Association, Inc.; Nationwide Mutual Insurance Co; Montblanc North America, LLC; and Uber Technologies, Inc. (Ex. 5). BWE's minimum contacts with this forum allow this Court to exercise personal jurisdiction over BWE consistent with traditional notions of fair play and substantial justice.

13. BWE's contacts with this District also include intentionally directing its licensing and enforcement demands for monetizing the Asserted Patents towards Wi-Tronix counsel in this District. BWE has sent numerous communications into this District to Wi-Tronix counsel in

[1] See, e.g., *Big Will Enterprises Inc. v. The Allstate Corporation et al.*, 2:23-cv-00090 (EDTX), Dkt. 11 (Voluntary Dismissal with Prejudice filed by BWE).

connection with its enforcement of the Asserted Patents. Thereafter, BWE repeatedly communicated with Wi-Tronix counsel in this District, in connection with its patent enforcement efforts concerning the Asserted Patents. Between September 10 and October 27, 2026 numerous email communications were sent into and out of this District to and from BWE's licensing manager and Wi-Tronix's patent counsel in connection with BWE's patent enforcement efforts against Wi-Tronix and its customers. BWE repeated its licensing demands in its several communications with Wi-Tronix's counsel.

14. BWE's business model involves, in part, suing companies located in this District, including The Allstate Corporation and Allstate Insurance Company, and leaving them the choice to either expend significant resources defending themselves in court or submit to a licensing agreement. If BWE is successful in its threats, a resident of this District, such as The Allstate Corporation, Allstate Insurance Company, or Wi-Tronix transforms from a potential licensee to BWE's customer. Here, BWE seeks Wi-Tronix's business in one fashion or the other, by licensing or by litigation judgments.

15. Because of its continuous and systemic contacts within this District, including those directly relating to Wi-Tronix, its customers, and the Asserted Patents giving rise to the events herein, BWE has purposefully directed its commercial, licensing, and enforcement activities at this District, thereby subjecting itself to personal jurisdiction in this District. BWE does business in the State of Illinois.

16. In the alternative, if the Court determines that BWE is not subject to personal jurisdiction under Federal Rule of Civil Procedure 4(k)(1)(A), BWE is subject to personal jurisdiction in this Court pursuant to Federal Rule of Civil Procedure 4(k)(2). This action arises under federal law, BWE has sufficient contacts with the United States as a whole and the State of Illinois, and the exercise of jurisdiction over BWE is consistent with the United States Constitution

and laws.

17. Venue is proper in this District pursuant to 28 U.S.C. §1391(c)(3) because BWE is a foreign entity with its principal place of business in Canada and does not reside in the United States and therefore may be sued in any judicial district. Venue is also proper in this District pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to Wi-Tronix's claims occurred in this District.

## WI-TRONIX AND ITS BUSINESS

18. For over 21 years, Wi-Tronix has been and is a leading innovator, designer, manufacturer and maintenance provider of railroad, locomotive and rail vehicle transport systems directed to assist railroads to operate more safely, efficiently and reliably through a connected platform system providing real-time insight and predictive diagnostics. Such systems include locomotive control systems and onboard electronics, cloud software, video analytics and AI-powered solutions that provide connected technology, real-time intelligence and continuous innovation to support informed decision-making across a rail transportation network. Included among such systems is the Violet Edge platform system conceived and designed by Wi-Tronix through significant effort and skill. The Violet Edge platform system supports a railroad operator's compliance with event recorder requirements of several countries and for highly regulated freight railroad and passenger rail operators and transit agencies. A rail platform is an integrated technology architecture that connects onboard locomotive systems, communications, data collection, data storage, software applications and users into a single environment. The platform connects information from across the vehicle and provides that information to the designated users through a single electronic ecosystem. The Violet Edge platform system was specifically designed and configured to be the operational foundation that brings railroad data acquisition, communications, data storage, edge processing, cloud connectivity, video and audio event recording and future applications into a single architecture. Today, approximately half of freight

locomotives operating on U.S. rails utilize the Violet Edge platform system. Wi-Tronix did not develop the Violet Edge platform system for, and the Violet Edge platform system does not use, the accelerometer or sensor data processing operations in the manner claimed by the Asserted Patents.

## BWE AND ITS BUSINESS

19. BWE claims to own all right, title, and interest in and to the Asserted Patents and asserts the right to license and enforce them.

20. On information and belief, BWE is a non-practicing entity that does not manufacture or sell products or services practicing the Asserted Patents claimed subject matter and instead engages in asserting, licensing and enforcing its patent portfolio, including through threatened and actual demands and patent infringement litigation against operating companies, and/or customers of operating companies.

21. Since 2020, BWE has filed more than thirty patent infringement lawsuits against operating companies in a wide array of industries, repeatedly asserting one or more of the Asserted Patents (the "Prior Lawsuits"). These defendants have included, among others, companies in the automotive, transportation, telematics, insurance, logistics, and technology industries. *See, e.g.*, *Big Will Enterprises Inc. v. Enterprise Holdings, Inc.*, Case No. 1-26-cv-00652 (WDTX) (filed March 18, 2026); *Big Will Enterprises Inc. v. Frotcom International, S.A.*, Case No. 1-25-cv-01929 (WDTX) (filed November 25, 2025); *Big Will Enterprises Inc. v. Mitsubishi Corporation (Americas) et al.*, Case No. 1-25-cv-01650 (WDTX) (filed October 15, 2025); *Big Will Enterprises, Inc. v. Geometris LP*, Case No. 4-25-cv-03961 (SDTX) (filed August 20, 2025); *Big Will Enterprises Inc. v. Loomis Armored Us, LLC*, Case No. 1-25-cv-01063 (WDTX) (filed July 7, 2025); *Big Will Enterprises Inc. v. Knight-Swift Transportation Holdings, Inc.*, Case No. 1-25-cv-00941 (WDTX) (filed June 18, 2025); *Big Will Enterprises Inc. v. Osram GMBH et al.*, Case

No. 1-25-cv-00179 (WDTX) (filed February 6, 2025); *Big Will Enterprises Inc. v. Rivian Automotive, Inc.*, Case No. 1-25-cv-00129 (WDTX) (filed January 28, 2025); *Big Will Enterprises Inc. v. Huzhou Dingchen Trading Co., Ltd. et al.*, Case No. 1-24-cv-01392 (WDTX) (filed November 14, 2024); *Big Will Enterprises Inc. v. Shenzhen Viofo Technology Co., Ltd.*, Case No. 1-24-cv-01393 (WDTX) (filed November 14, 2024); *Big Will Enterprises Inc. v. Kia America, Inc.*, Case No. 1-24-cv-01200 (WDTX) (October 8, 2024); *Big Will Enterprises Inc. v. Matrix Telematics Limited*, Case No. 1-24-cv-00871 (WDTX) (filed August 1, 2024); *Big Will Enterprises Inc. v. Solutions Into Motion Limited*, Case No. 1-24-cv-00833 (WDTX) (filed July 24, 2024); *Big Will Enterprises Inc. v. Aware360 Ltd.*, Case No. 1-24-cv-00799 (WDTX) (filed July 18, 2024); *Big Will Enterprises Inc. v. Safe Apps Limited*, Case No. 2-24-cv-00418 (EDTX) (filed June 4, 2024); *Big Will Enterprises, Inc. v. Earnix, Inc.*, Case No. 4-24-cv-00069 (EDTX) (filed January 25, 2024); *Big Will Enterprises Inc. v. Earnix, Inc.*, Case No. 4-24-cv-00078 (NDTX) (January 23, 2024); *Big Will Enterprises Inc. v. SafeDrivePod International BV*, Case No. 1-24-cv-00042 (WDTX) (filed January 11, 2024); *Big Will Enterprises Inc. v. Autoliv, Inc. et al.*, Case No. 4-23-cv-04847 (SDTX) (filed December 29, 2023); *Big Will Enterprises Inc. v. Overhaul Risk Advisory Services, LLC et al.*, Case No. 6-23-cv-00774 (WDTX) (filed November 13, 2023); *Big Will Enterprises Inc. v. GreenRoad Technologies Inc.*, Case No. 6-23-cv-00690 (WDTX) (filed September 30, 2023); *Big Will Enterprises Inc. v. The American Automobile Association, Inc.*, Case No. 6-23-cv-00571 (WDTX) (filed August 6, 2023); *Big Will Enterprises Inc. v. Uber Technologies, Inc. d/b/a Uber*, Case No. 6-23-cv-00403 (WDTX) (May 24, 2023); *Big Will Enterprises Inc. v. Alinsco Managing General Agency, Inc.*, Case No. 6-23-cv-00341 (WDTX) (filed May 9, 2023); *Big Will Enterprises Inc. v. Solera Holdings Inc.*, Case No. 4-23-cv-00257 (NDTX) (filed March 14, 2023); *Big Will Enterprises Inc. v. The Allstate Corporation et al.*, Case No. 2-23-cv-00090 (EDTX) (filed March 3, 2023); *Big Will Enterprises Inc. v. Solera Holdings*

*Inc.*, Case No. 4-23-cv-00197 (NDTX) (filed February 25, 2023); *Big Will Enterprises Inc. v. Nationwide Mutual Insurance Company*, Case No. 6-22-cv-00993 (WDTX) (filed September 21, 2022); *Big Will Enterprises Inc. v. Unaliwear, Inc.*, Case No. 6-20-cv-00351 (WDTX) (filed April 30, 2020); *Big Will Enterprises Inc. v. Montblanc North America, LLC*, Case No. 6-20-cv-00354 (WDTX) (filed April 30, 2020); *Big Will Enterprises Inc. v. Kronoz LLC*, Case No. 5-20-cv-00027 (SDTX) (filed February 29, 2020); *Big Will Enterprises Inc. v. Unaliwear, Inc.*, Case No. 6-20-cv-00040 (WDTX) (filed January 22, 2020).

22. Upon information and belief, BWE has filed its Prior Lawsuits exclusively in federal district courts in Texas.

23. BWE has voluntarily dismissed with prejudice numerous Prior Lawsuits within months or weeks of filing, including actions that terminated before substantial merits litigation occurred. This pattern is consistent with BWE's use of patent infringement litigation as part of its patent licensing and enforcement activities.

24. BWE sent a demand letter to Chief Executive Officer, Jaguar Transport Holdings LLC ("Jaguar") dated August 13, 2026, regarding the Asserted Patents (the "Jaguar Demand Letter"). Jaguar is a customer of Wi-Tronix, and Jaguar had previously purchased and is currently using a Violet Edge platform system on its rolling stock. The Jaguar Demand Letter, at page 2, alleges the following:

> "The accused products and systems include, without limitation, Jaguar-controlled locomotives and rail vehicles equipped with Wi-Tronix Violet Edge, Violet 800-series, or substantially similar onboard monitoring/event-recorder hardware; associated accelerometers, gyroscopes, inertial-navigation or motion-sensing modules; event recorders, digital video recorders, locomotive data-acquisition systems, crash-hardened memory, onboard processors, memory, firmware, and software; Wi-Tronix cloud/portal resources used for real-time and historical event

data, alerts, diagnostics, and incident review; and Jaguar systems that receive, analyze, or act upon the resulting sensor-derived information (collectively, the "Accused Products")."

"The technical center of the accused functionality is onboard acquisition and processing of locomotive movement and operating data. Wi-Tronix expressly discloses use of accelerometers and gyroscopes in automated rail monitoring and has patented acceleration-based locomotive data-recorder technology using a 3-axis gyroscope, 3-axis accelerometer, 3-axis magnetometer, microcontroller automatic orientation, pitch/roll compensation, impact detection, rough-operating-condition detection, and inertial navigation. The Jaguar/Wi-Tronix collaboration, combined with Wi-Tronix's disclosed Violet Edge architecture, provides a direct supplier-and-platform connection to the type of multi-axis inertial processing at the core of BWE's patents."

25. In the Jaguar Demand Letter, BWE: (a) claims ownership of the Asserted Patents; (b) accuses Jaguar of infringing the Asserted Patents through an alleged "Wi-Tronix/Jaguar locomotive sensor-processing and event-monitoring functionality;" (c) provides charts purporting to map claim limitations of the Asserted Patents onto the Violet Edge system; (d) demands that Jaguar either enter into a fee-bearing license with BWE or cease use of the allegedly infringing technologies and compensate BWE for past use; and (e) demands a response within two weeks of the date appearing on the Demand Letter.

26. At or around the same time, BWE sent substantially similar patent enforcement demand letters to other customers who purchased Violet Edge systems from Wi-Tronix, asserting that the customer's use of Wi-Tronix's Violet Edge system infringed BWE's patents. These customers included: 1) Omni TRAX Holdings Combined, Inc.; 2) Brightline Trains Florida LLC; 3) Livonia, Avon & Lakeville Railroad Corp./Western New York and Pennsylvania Railroad LLC;

4) Iowa Interstate Railroad LLC; 5) Patriot Rail Company; 6) CSX Transportation; 7) Mississippi Export Railroad Company; 8) Paducah & Louisville Railway, Inc., and upon information and belief several other railroad companies operating rail transport in the United States.

27. At or around the same time, BWE sent substantially similar patent enforcement demand letters to additional participants in the railcar industry, including at least GATX Corporation and Union Tank Car Company GATX. GATX subsequently filed a declaratory judgment action against BWE in this District. *GATX Corporation v Big Will Enterprises Inc.,* No. 1:26-cv-08492 (N.D. Ill. filed July 17, 2026). Union Tank Car Company also subsequently filed a declaratory judgment action against BWE in this District. *Union Tank Car Company v Big Will Enterprises, Inc.*, No. 1:26-cv-10014 (N.D. Ill. filed August 19, 2026).

28. BWE's conduct creates a substantial and immediate controversy concerning Wi-Tronix's customers' alleged infringement of the Asserted Patents using Wi-Tronix's Violet Edge system. BWE expressly accused Wi-Tronix's customers of infringement, demanded that Wi-Tronix's customers take a license or cease their allegedly infringing activities and compensate BWE for past use, and imposed a self-imposed deadline. As stated above, BWE has an extensive history of filing patent infringement actions to enforce the Asserted Patents, and its patent infringement assertions against Union Tank Car Company and GATX Corporation have resulted in litigation in this District.

29. Accordingly, an actual, definite, concrete, and justiciable controversy exists between Wi-Tronix and BWE concerning Wi-Tronix's customers' alleged infringement of, and the validity of, the claims asserted against Wi-Tronix's customers under the Asserted Patents. This controversy is of sufficient immediacy and reality to warrant declaratory relief.

## THE ASSERTED PATENTS AND BWE'S INFRINGEMENT ALLEGATIONS

30. The '273 Patent and '558 Patent are related patents that claim priority to the same three provisional applications filed in 2012. Both patents are directed to systems and methods for

determining a "mobile thing motion activity" ("MTMA") associated with a "mobile thing" ("MT") using movement data obtained from a "wireless communication device" ("WCD") transported by the MT. The patents generally disclose, among other things, receiving three streams of accelerometer data sample values (and, in the '558 Patent, other sensor data) indicative of movement of the WCD, recognizing a set of data sample values as a reference in a 3D coordinate system, determining reference data from a set of sensor data, using the reference data to calculate or normalize subsequent movement data, and determining an MTMA based on the resulting movement data.

31. The '914 Patent and '951 Patent are related patents directed to "interactive personal surveillance and security" ("IPSS") systems and methods. The '951 Patent is a continuation-in-part of the application that issued as the '914 Patent, and both claim priority to a provisional application filed in 2008. The '914 Patent discloses systems and methods in which a portable or wireless communication device collects information concerning a user, or the user's surroundings, uses sensor or other data to assess the user's activity or circumstances, facilitates a user-defined response to the user activity, selects or changes a surveillance mode based on the user-defined response, and causes the device or a remote computer to take a responsive action, such as collecting or transmitting surveillance information, activating an alarm, or contacting another person or device.

32. The '951 Patent discloses a wireless communication device having computer code with instructions to 1) enter a first mode of operation with a first investigation process with sensors capturing first data; 2) determine whether the first data indicates a user activity relating to a user's need for assistance, an accident or a crime; and 3) when the first data involves the activity, the wireless communication device enters a second mode of operation involving a second mode of operation involving a second investigation process that is different from the first investigation using sensors that capture second data further indicative of the activity.

33. Upon information and belief, BWE's infringement allegations appear to rely heavily on publicly available materials and generalized information concerning the railcar-telematics industry, rather than on information specific to Wi-Tronix's customers' actual systems and operations. These publicly available materials are general to the extent that they describe what the Violet Edge system will do in terms of objectives, without describing how the Violet Edge system accomplishes these objectives.

34. The Jaguar Demand Letter repeatedly qualifies material factual assertions concerning Wi-Tronix's customers' accused systems with qualifying phrases such as "on information and belief," and "support the inference," rather than identifying concrete facts concerning the specific technologies, systems, or equipment actually used by the Wi-Tronix Violet Edge system.

35. Wi-Tronix and its customers have not infringed and do not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim asserted by BWE against Wi-Tronix's customers under any of the Asserted Patents. In addition, the patent claims asserted by BWE against Wi-Tronix and its customers are invalid.

## COUNT I
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '273 PATENT

36. Wi-Tronix incorporates and realleges each allegation in paragraphs 1 through 35 above as though fully set forth herein.

37. BWE has accused Wi-Tronix's customers of infringing claims 1-4, 8, 11-16 and 20-23 of the '273 Patent, including independent claims 1, 12, and 22, through what BWE characterizes as a "locomotive sensor-processing and event monitoring functionality."

38. Each of independent claims 1, 12, and 22 of the '273 Patent requires, among other things, the receipt of acceleration data sample values from an accelerometer associated with a wireless communication device ("WCD") transported by a mobile thing ("MT"), the determination

or computation of reference data from that acceleration data, the use of the reference data to normalize or calculate movement data, and the determination or identification of a motion activity associated with the MT (referred to in the '273 Patent as an "MTMA") based on the resulting movement data.

39. Wi-Tronix's customers do not perform those claimed sensor-processing operations. The Violet Edge system was not developed to and does not recognize or determine accelerometer-based data sample values as a reference in a 3D coordinate system, normalize acceleration data in a claimed reference framework, calculate movement data from such reference data, and determine an MTMA from such movement data. The Violet Edge platform system reports gyroscope data on three axes, however that data is not an input to orientation and is not used to classify an activity.

40. BWE's charts in the Jaguar Demand Letter do not identify facts showing in detail that the Violet Edge system of Wi-Tronix performs the particular accelerometer-processing and reference-determining steps required by claims 1, 12, or 22. Instead, BWE attempts to equate the elements of the asserted claims of the '273 patent with alleged features and functions of the Violet Edge system that, in actuality, do not exist. The specific acceleration-data, reference-framework based on a set of accelerometer data sample values, normalization, movement-data, and MTMA limitations recited by the claims are not found in the Violet Edge platform system.

41. For example, claim 1 requires recognizing a particular set of accelerometer data sample values as a reference defining a relationship between the orientation of the WCD and a two-dimensional (2D) coordinate system, computing reference data based on that particular reference set, calculating movement data in that 2D coordinate system based on the reference data, and determining an MTMA from the resulting movement data. The Violet Edge system does not perform these operations.

42. Claim 12 of the '273 Patent similarly requires determining from accelerometer data

a reference framework in two dimensions, normalizing subsequent acceleration data using that reference data so that the subsequent data can be analyzed in that two-dimensional space, and identifying an MTMA based on the normalized data. The Violet Edge system does not perform these operations.

43. Claim 22 of the '273 Patent requires computing reference data which reference defines a relationship between accelerometer data sample values and a reference framework enabling comparison of three-dimensional data sets of data sample values, calculating movement data based on that reference data, and determining an MTMA (motion activity) based on that movement data. The Violet Edge system does not perform those operations.

44. Claim 23 of the '273 Patent recites "determining a rotation matrix based upon the particular set of reference data sample values, and calculating the movement data based upon the rotation matrix and one or more sets of the data sample values that are not the particular reference set." The Violet Edge system performs neither of these steps.

45. Because the Violet Edge system does not perform every step of any asserted method claim of the '273 Patent, either itself or through acts attributable to Wi-Tronix customers, use of the Violet Edge system does not directly infringe the asserted claims of the '273 Patent under 35 U.S.C. § 271(a).

46. Wi-Tronix also does not induce infringement of the '273 Patent under 35 U.S.C. §271(b). Wi-Tronix has not knowingly and intentionally encouraged any customer to perform all limitations of any asserted claim of the '273 Patent with knowledge that the encouraged conduct constitutes infringement.

47. Wi-Tronix does not contributorily infringe the '273 Patent under 35 U.S.C. § 271(c). Wi-Tronix does not sell, offer to sell, or import a component of a patented combination, or a material or apparatus for use in practicing a patented process, that constitutes a material part of the

claimed invention, is specially made or especially adapted for use in infringement, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

48. Therefore, Wi-Tronix and its Violet Edge system customers have not infringed, and do not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '273 Patent asserted by BWE against customers of Wi-Tronix.

49. Wi-Tronix is entitled to a declaratory judgment that neither it nor its customers have infringed and do not infringe the '273 Patent.

**COUNT II**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '273 PATENT**

50. Wi-Tronix incorporates and realleges each allegation in paragraphs 1 through 35 above as though fully set forth herein.

51. The claims of the '273 Patent asserted by BWE against customers of Wi-Tronix are invalid under 35 U.S.C. § 101 because they are directed to patent-ineligible subject matter.

52. The asserted claims of the '273 Patent are directed to the collection, mathematical processing, and classification of movement-related data. For example, claim 1 receives acceleration data, identifies selected data as a reference, computes reference data defining a coordinate relationship, mathematically derives movement data using the reference data, and determines an MTMA from the resulting data.

53. The asserted claims do not recite an improvement to the operation or functionality of an accelerometer, wireless communication device, processor, or other computing technology. Rather, they use conventional sensing and computing components as tools for acquiring data and performing mathematical analysis and classification of that data.

54. The recited reference-data, coordinate-transformation, movement-calculation, and activity-classification operations do not themselves constitute a technological improvement to the

underlying sensing or computing devices. The claims instead use those devices to obtain information, mathematically transform that information, and classify the resulting information according to a motion activity.

55. The additional claim limitations, considered individually and in combination, do not transform that patent-ineligible data-processing concept into patent-eligible subject matter. The claims rely on accelerometers, wireless communication devices, mathematical transformations, statistical analysis, and activity classification performing their ordinary functions.

56. The dependent claims add limitations concerning, among other things, rotation matrices, statistical metrics, frequency-domain processing, scoring, and activity-based actions, but those limitations likewise concern the collection, mathematical processing, analysis, or use of sensor-derived information and do not recite a technological improvement sufficient to render the claimed subject matter patent eligible.

57. The '273 Patent itself acknowledges that, before its claimed priority date, researchers had used accelerometer data to determine a person's motion activity and had employed statistical techniques for doing so. The specification likewise describes the use of conventional mathematical and statistical techniques (including averages, standard deviation or variance, root mean square calculations, higher-order moments, and frequency-domain analysis) to classify motion activity. The asserted claims employ such sensing and mathematical-processing techniques to improve the accuracy with which movement-related information is classified and to permit actions to be taken based on the resulting classification, rather than reciting an improvement to the operation of the accelerometer, wireless communication device, or computing hardware itself.

58. Wi-Tronix therefore is entitled to a declaratory judgment that the claims of the '273 Patent asserted by BWE against customers of Wi-Tronix are invalid under 35 U.S.C. § 101.

59. Wi-Tronix reserves the right to assert additional grounds of invalidity, including

under 35 U.S.C. §§ 102, 103, and 112, as warranted by further investigation, discovery, and the development of the record. This includes, but is not limited to, grounds of invalidity based on prior art.

**COUNT III**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '914 PATENT**

60. Wi-Tronix incorporates and realleges each allegation in paragraphs 1 through 35 above as though fully set forth herein.

61. BWE has accused Wi-Tronix's customers of infringing independent claim 15 of the '914 Patent and claims dependent from claim 15 through what BWE characterizes as "a locomotive sensor-processing and event monitoring functionality."

62. Claim 15 requires, among other things, determining, by a computing device, a "user activity and/or user surroundings," determining a "surveillance mode" corresponding to that user activity or surroundings, facilitating a "user-defined response" to the user activity or surroundings, and communicating "surveillance information" to a remotely located computer device.

63. Wi-Tronix's Violet Edge platform system does not perform those claimed personal-surveillance functions. Violet Edge does not determine a human user's activity or surroundings, determine a surveillance mode corresponding to such activity or surroundings, facilitate a user-defined response to such activity or surroundings, and communicate surveillance information concerning such a human user to a remotely located computer device.

64. BWE's '914 Patent is directed to an interactive personal surveillance and security (IPSS) system for users carrying a wireless communications device. A remotely located surveillance system (RLS) receives information from the user's communications device and the RLS follows user-definable parameters that establish the level or type of interactivity, and when alarms or messages should be sent to third parties as needed. The IPSS system of this patent is user defined.

65. Claim 15 of the '914 Patent, the only independent claim asserted against the Violet Edge system, has the following elements of the covered method:

15. A method comprising the steps of:

determining, by a computing device, a user activity and/or user surroundings;

determining, by the computing device, a surveillance mode that corresponds to the user activity and/or the user surroundings;

facilitating, by the computing device, a user-defined response to the user activity and/or the user surroundings; and

communicating, by the computing device, surveillance information to at least one remotely located computer device.

A key feature of claim 15 is the provision that the user (the one with the wireless communication device, or cell phone) responds to the computer after the computer determines a user activity and after the computer determines a surveillance mode corresponding to the user activity. The user-defined response is facilitated by the computing device, and the surveillance information is sent to a remotely located computer.

66. The specification of the '914 Patent clearly defines the "user" as an individual person carrying a cell phone who is in motion. col. 1, lns. 14-36. The specification also describes the '914 Patent invention as: "The user will select, at least in part, how the surveillance system will determine when actions are needed to help or assist the user. col. 2, lns. 51-53. See also col. 3, lns. 24-30 for an example of communications from the user to the computer by voice, and col. 6, lns. 57-59. Similarly, the '914 specification states:

"the IPSS generally includes a user definable area that allows each user to define what activations or modes of operations will occur as information is triggered or sent to the RLS (remotely located surveillance) system." col. 7, lns. 36-38.

Further, the specification of the '914 Patent states:

> "the WCD (wireless communications device) screens allow the user to setup or change the IPSS system settings." col. 10, lns. 60-61.

Further statements describing the metes and bounds of the term "user-defined response" in claim 15 are found at col. 14, lns. 16-61 of the '914 Patent specification.

67. The Violet Edge method and system have no function where the locomotive engineer, or any other "user" or person, has input to the system once the system is activated. There is no step or function of the Violet Edge system where the engineer or another user provides a "user-defined response" to the user activity or the user surroundings.

68. Further, there is no equivalent structure or function in the Violet Edge system to the "user-defined response" as that term is used in the context of claim 15 of the '914 Patent.

69. Because the Violet Edge system does not perform every step of claim 15 of the '914 Patent, or any asserted dependent claim, either itself or through acts attributable to Wi-Tronix, the Wi-Tronix Violet Edge system does not directly infringe the asserted claims of the '914 Patent under 35 U.S.C. § 271(a).

70. Wi-Tronix also does not induce infringement of the '914 Patent under 35 U.S.C. §271(b). Wi-Tronix has not knowingly and intentionally encouraged any third party to perform all limitations of any asserted claim of the '914 Patent with knowledge that the encouraged conduct constitutes infringement.

71. Wi-Tronix does not contributorily infringe the '914 Patent under 35 U.S.C. § 271(c). Wi-Tronix does not sell, offer to sell, or import a component of a patented combination, or a material or apparatus for use in practicing a patented process, that constitutes a material part of the claimed invention, is specially made or especially adapted for use in infringement, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

72. Neither Wi-Tronix nor its customers have infringed and do not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '914 Patent asserted by BWE against Wi-Tronix's customers.

73. Wi-Tronix is entitled to a declaratory judgment that it and/or its customers have not infringed and do not infringe the '914 Patent.

## COUNT IV
## DECLARATORY JUDGMENT OF INVALIDITY OF THE '914 PATENT

74. Wi-Tronix incorporates and realleges each allegation in paragraphs 1 through 35 above as though fully set forth herein.

75. The claims of the '914 Patent asserted by BWE against Wi-Tronix's customers are invalid under 35 U.S.C. § 101 because they are directed to patent-ineligible subject matter.

76. Independent claim 15 is directed to the abstract process of determining a person's activity or surroundings, selecting a response appropriate to those circumstances, facilitating that response, and communicating information concerning the circumstances to another location.

77. Claim 15 recites those functions at a high level of generality and requires only a generic computing device to perform the claimed determining, facilitating, and communicating functions. The claim does not recite a particular technological mechanism for determining user activity or surroundings, selecting the surveillance mode, implementing the user-defined response, or communicating the surveillance information.

78. The use of a generic computing device to automate those information-gathering, decision-making, response, and communication functions does not constitute an improvement to computer or communications technology. Nor does arranging those conventional functions in the claimed sequence transform the abstract process into a technological invention.

79. The additional limitations of the asserted dependent claims, including automatically activating a response, assigning a risk level, transmitting information to a database, notifying contacts, and matching sensor data to an algorithm using a user-defined parameter, likewise employ conventional computing and communications functionality to implement the same abstract surveillance-and-response process.

80. Considered individually and as an ordered combination, the limitations of the asserted claims do not add a technological improvement or other feature sufficient to transform the claimed abstract process into patent-eligible subject matter.

81. Wi-Tronix therefore is entitled to a declaratory judgment that the claims of the ’914 Patent asserted by BWE against customers of Wi-Tronix are invalid under 35 U.S.C. § 101.

82. Wi-Tronix reserves the right to assert additional grounds of invalidity, including under 35 U.S.C. §§ 102, 103, and 112, as warranted by further investigation, discovery, and the development of the record. This includes, but is not limited to, grounds of invalidity based on prior art, including publicly available information demonstrating that the claimed subject matter of claim 15 of the ‘914 patent was in use before the priority dates of the Asserted Patents. See, for example, PCT published patent application WO 2005/017846 (Feb. 24, 2005) ("Wolfe").

**COUNT V**
**DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE ’951 PATENT**

83. Wi-Tronix incorporates and realleges each allegation in paragraphs 1 through 35 above as though fully set forth herein.

84. BWE has accused Wi-Tronix customers of infringing independent claim 1 of the ’951 Patent and claims dependent from claim 1 through what BWE characterizes as Wi-Tronix’s locomotive sensor-processing and event-monitoring functionality.

85. Claim 1 requires a wireless communications device (“WCD”) having computer-program instructions that: (a) enter a first mode of operation involving a first investigation process

in which one or more sensors capture first data; (b) determine whether that first data is indicative of an activity relating to "a user need for assistance, an accident, or a crime"; and (c), when the first data may involve such activity, enter a second, different mode of operation involving a second investigation process to capture additional sensor data further indicative of the activity.

86. Wi-Tronix does not make, use, sell, offer to sell, or import a WCD having those claimed instructions. The Violet Edge system does not contain instructions to conduct the claimed first and second different investigation processes for determining whether sensor data relates to a user's need for assistance, an accident, or a crime. Upon detecting an episode, the Violet Edge platform does not change sensor operation, sampling or recording. Video requested after an episode is detected for a time range taken from files previously recorded, and every automatic window starts before the trigger: five seconds for a hard couple, thirty-five seconds for an engineer-initiated emergency, and sixty seconds for a penalty emergency. The data acquisition and recording system of the Violet Edge platform system, when in real-time mode asserted by an emergency episode changes how often records already written to storage are sent to the back office, from about one per thousand seconds to about once per second. Recording itself runs on every sample boundary whether or not that mode is activated.

87. The specification of the '951 Patent defines a WCD as being limited to a "Personal" device, similar to a cell phone. See: U.S. Patent No. 8,559,914, col. 2, lns. 31-33, *Id.* at col. 12, lns. 35-36, and capable of being carried with the purpose of surveilling user surroundings outside of a specific area. *Id.* at col. 1, lns. 55-59; *Id.* at col. 13., lns. 49-50.

88. BWE's charts in the Jaguar Demand Letter do not identify correct facts showing the existence in any Wi-Tronix product or system of the claimed conditional transition into a second, different investigation process. Instead, BWE incorrectly states that when the first data indicates a condition such as an accident, the Violet Edge system invokes a different investigation

or response process using additional data to further characterize the event. In truth, the Violet Edge system, upon a determination of an incident, does not invoke a different investigation using additional data to further characterize the event. After determining that an incident occurs, the Violet Edge uses the previously-accumulated data for further processing. No second data is captured.

89. Wi-Tronix's Violet Edge system does not satisfy the specific limitations of claim 1 requiring computer-program instructions that determine whether first sensor data is indicative of activity relating to a user need for assistance, an accident, or a crime and, based on that determination, cause the WCD to enter a different second investigation mode to capture further sensor data indicative of that activity.

90. Because neither Wi-Tronix nor its customers make, use, sell, offer to sell, or import a device meeting every limitation of claim 1 or the asserted dependent claims, Wi-Tronix and/or its customers do not directly infringe the asserted claims of the '951 Patent under 35 U.S.C. §271(a).

91. Wi-Tronix also does not induce infringement of the '951 Patent under 35 U.S.C. §271(b). Wi-Tronix has not knowingly and intentionally encouraged any third party to practice every limitation of any asserted claim of the '951 Patent with knowledge that the encouraged conduct constitutes infringement.

92. Wi-Tronix does not contributorily infringe the '951 Patent under 35 U.S.C. §271(c). Wi-Tronix does not sell, offer to sell, or import a component of a patented combination, or a material or apparatus for use in practicing a patented process, that constitutes a material part of the claimed invention, is specially made or especially adapted for use in infringement, and is not a staple article or commodity of commerce suitable for substantial non-infringing use.

93. Wi-Tronix therefore has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '951 Patent asserted by BWE against

Wi-Tronix's customers.

94. Wi-Tronix is entitled to a declaratory judgment that it has not and does not infringe the '951 patent, and that its customers have not infringed and do not infringe the '951 Patent.

**COUNT VI**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '951 PATENT**

95. Wi-Tronix incorporates and realleges each allegation in paragraphs 1 through 35 above as though fully set forth herein.

96. The claims of the '951 Patent asserted by BWE against customers of Wi-Tronix are invalid under 35 U.S.C. §101 because they are directed to patent-ineligible subject matter.

97. Claim 1 is directed to the abstract process of gathering information concerning a potentially significant event, evaluating that information to determine whether further investigation is warranted, and, based on that determination, escalating the investigation to obtain additional information.

98. Claim 1 implements the abstract process through generic components, including a wireless communications device, memory, processors, and one or more sensors. The claim does not recite a particular sensor, detection algorithm, data-analysis technique, or technological mechanism for determining whether the first data is indicative of a user need for assistance, an accident, or a crime. Instead, it claims the functional result of making that determination and, based on the determination, entering a different investigation mode to collect additional data.

99. Using generic memory, processors, sensors, and a wireless communications device to automate that information-gathering, evaluation, and escalation process does not improve the operation of those components or otherwise provide a technological solution to a technological problem. Those components perform their ordinary functions of storing instructions, processing information, collecting data, and changing operating modes.

100. The additional limitations of the asserted dependent claims, including collecting images, video, or audio, communicating information to remote systems, activating or requesting activation of alarms, comparing data to reference data, sampling less sensor data in a first investigation process than in a second investigation process, and increasing a sensor sampling rate in the second mode, likewise employ information-gathering, processing, and communications functions and do not recite a technological improvement sufficient to render the claimed subject matter patent eligible.

101. Considered individually and as an ordered combination, the limitations of the asserted claims do not transform the claimed gather-evaluate-escalate process into patent-eligible subject matter.

102. Wi-Tronix therefore is entitled to a declaratory judgment that the claims of the '951 Patent asserted by BWE against Wi-Tronix customers are invalid under 35 U.S.C. § 101.

103. Wi-Tronix reserves the right to assert additional grounds of invalidity, including under 35 U.S.C. §§ 102, 103, and 112, as warranted by further investigation, discovery, and the development of the record. This includes, but is not limited to, grounds of invalidity based on prior art, including publicly available information demonstrating that the claimed subject matter of the '951 Patent was in use before the priority dates of the Asserted Patents.

## COUNT VII
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '558 PATENT

104. Wi-Tronix incorporates and realleges each allegation in paragraphs 1 through 35 above as though fully set forth herein.

105. BWE has accused customers of Wi-Tronix of infringing independent claims 1, 17, 27, 42, and 52 of the '558 Patent, as well as claims dependent from one or more of those independent claims.

106. Independent method claims 1, 17, and 27 require, among other things, receiving

movement-indicative sensor data from one or more sensors associated with a WCD transported by a mobile thing, determining or computing reference data from sensor data, using the reference data to normalize or calculate movement data, and identifying or determining a mobile thing motion activity ("MTMA") based on the resulting normalized or movement data.

107. The Wi-Tronix Violet Edge system does not perform those claimed sensor-processing operations, was not developed to receive and process movement-sensor data in the manner claimed, to determine or compute the claimed reference data or reference framework, to normalize movement-sensor data with such reference data, to calculate the claimed movement data from such reference data, and to identify an MTMA from the resulting normalized or movement data.

108. Each independent claim of the '558 Patent, including claims 42 and 52, requires as its final element "determining or identifying a mobile thing motion activity associated with the mobile thing, based on the movement data," or "based on the normalized second data." The Violet Edge platform performs none of these steps.

109. Wi-Tronix's Violet Edge system orientation logic produces exactly one output: a mapping of three physical sensor channels to three named vehicle axes, with signs, which is a static installation parameter. The mapping does not describe what the locomotive is doing, nor change when the locomotive's condition changes. This parameter is identical whether the locomotive is accelerating, coasting, braking or parked.

110. Further, the direction of information flow is reversed between the Violet Edge system functionality and the claimed subject matter of the '558 Patent. In the '558 Patent, motion data is the input and the activity is the output. In the Violet Edge system, the locomotive's operating state is an input. It is known that the locomotive is departing under power because the reverser, throttle and traction motor current provide this data. The output of the Violet Edge system

is the mounting geometry. The Violet Edge system does not infer activity from motion data, the activity is informed by the locomotive's own controls and that knowledge is used to infer geometry.

111. Thus, the Violet Edge system does not identify or determine a mobile thing motion activity associated with the mobile thing based on the movement data or normalized second data, and does not infringe any of the claims of the '558 Patent.

112. Further, the Jaguar Demand Letter, at page 5, equates the clause of claim 1 of the '558 Patent: "recognizing a particular set of data sample values as a reference for defining an orientation of the WCD in a coordinate system" with "Wi-Tronix's own inertial architecture expressly includes automatic orientation, pitch/roll compensation, and inertial navigation." This comparison is not correct. The Violet Edge system's "automatic orientation" is a one-time axis-mapping process where each of the three asset axes is assigned six enumerated labels: +X, -X, +Y, -Y, +Z and -Z. The result is written into the Violet Edge sensor board's firmware with a set-orientation command and stored in a non-volatile memory, where it remains for the life of the installation. Thus, the automatic orientation of the Violet Edge system produces six enumerated labels, not reference data or a coordinate transform.

113. The axis map referred to in the previous paragraph is used after it is stored. Once orientation completes, each locomotive axis in which a Violet Edge platform system is installed is a named sensor channel with a sign, and later samples are read through that assignment. Pitch and roll are computed from these channels, and only after the orientation flag is valid. That assignment is a fixed permutation of three physical channels. Later samples are not normalized against a stored reference set, not multiplied by a rotation matrix, and not converted into movement data from which an activity is identified.

114. The "pitch/roll compensation" function of the Violet Edge system is a pair of single-

line direct angle readouts of the gravity vector within the already-fixed body frame. These read outs are not used to rotate, normalize or transform any data, and nothing is multiplied by these readouts. There is no rotation matrix and no normalization of a data sample value stream anywhere in the pitch/roll path. The "compensation" functionality of the Violet Edge refers to accounting for the locomotive sitting on a graded or super-elevated track when interpreting a measurement, not to normalizing a data stream into a reference framework. The "inertial navigation" functionality of the Violet Edge system refers to the separate dead-reckoning and heading functions of the system, which consumes the orientation result. The inertial navigation feature of the Violet Edge system is not part of determining orientation, and does not correspond to the elements of at least claim 1 of the '558 Patent.

115. For all of the above-stated reasons, the Wi-Tronix Violet Edge system does not fall within the scope of independent claims 1, 17, 27, 42 and/or 52 of the '558 Patent.

116. Because Wi-Tronix and its customers do not perform every step of the asserted method claims of the '558 patent either itself or through acts attributable to Wi-Tronix and do not make, use, sell, offer to sell, or import a system meeting every limitation of the asserted system claims, neither Wi-Tronix nor its customers directly infringe the asserted claims of the '558 Patent under 35 U.S.C. §271(a).

117. Wi-Tronix also does not induce infringement of the '558 Patent under 35 U.S.C. §271(b). Wi-Tronix has not knowingly and intentionally encouraged any third party to perform every limitation of an asserted method claim or to make or use a system satisfying every limitation of an asserted system claim with knowledge that the encouraged conduct constitutes infringement.

118. Wi-Tronix does not contributorily infringe the '558 Patent under 35 U.S.C. §271(c). Wi-Tronix does not sell, offer to sell, or import a component of a patented combination, or a material or apparatus for use in practicing a patented process, that constitutes a material part of the claimed invention, is specially made or especially adapted for use in infringement, and is not a

staple article or commodity of commerce suitable for substantial non-infringing use.

119. Wi-Tronix therefore has not infringed and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim of the '558 Patent asserted by BWE against customers of Wi-Tronix.

120. Wi-Tronix is entitled to a declaratory judgment that it and its customers have not infringed and do not infringe the '558 Patent.

**COUNT VIII**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '558 PATENT**

121. Wi-Tronix incorporates and realleges each allegation in paragraphs 1 through 35 above as though fully set forth herein.

122. The claims of the '558 Patent asserted by BWE against Wi-Tronix are invalid under 35 U.S.C. § 101 because they are directed to patent-ineligible subject matter.

123. The asserted claims are directed to collecting movement-related sensor data, mathematically processing that data relative to reference information, and classifying the resulting data as a mobile thing motion activity.

124. Independent method claims 1, 17, and 27 of the '558 Patent recite variations of that same information-processing process. Claims 1 and 27 receive sensor data, compute or determine reference information, use the reference information to calculate movement data, and determine an MTMA. Claim 17 receives first and second sensor data, determines a reference framework, normalizes the second data using that framework, and identifies an MTMA from the normalized data.

125. Independent system claims 42 and 52 of the '558 Patent do not materially alter the character of the claimed subject matter. They recast substantially the same information-processing functions as generic memories, processors, and computer program code configured to receive sensor data, determine reference data, normalize or calculate movement data, and identify an

MTMA.

126. The asserted claims do not recite an improvement in the operation or functionality of the claimed sensors, processors, memories, wireless communication devices, or other computing technology. Rather, those conventional technological components are used as tools to acquire information concerning movement and mathematically analyze and classify that information.

127. The claimed reference-data, normalization, movement-calculation, and activity-classification operations do not improve the underlying sensing or computing technology itself. They instead concern the manipulation and analysis of information obtained through conventional sensors and computers.

128. Neither the generic sensing and computing components nor the claimed mathematical and classification operations, considered individually or as an ordered combination, transform the claimed data-processing concept into patent-eligible subject matter.

129. The asserted dependent claims add conventional statistical, temporal, frequency-domain, scoring, sensor-selection, and activity-responsive functions but do not alter the basic character of the claims as sensor-data collection, mathematical analysis, and classification or otherwise recite a technological improvement sufficient to render the claims patent eligible.

130. The '558 Patent's specification acknowledges that mathematical and statistical analysis of sensor data for identifying human motion activity was known before the claimed inventions, including the use of averages, variance or standard deviation, and other statistical measures. The specification further employs conventional mathematical techniques, including frequency-domain analysis, to distinguish among different motion activities. The asserted claims use sensors and generic computing components to obtain movement-related information and apply mathematical and statistical processing to classify that information and permit responsive actions,

rather than reciting an improvement to the operation of the underlying sensors, processors, memories, or wireless communication devices themselves.

131. Wi-Tronix therefore is entitled to a declaratory judgment that the claims of the '558 Patent asserted by BWE against customers of Wi-Tronix are invalid under 35 U.S.C. § 101.

132. Wi-Tronix reserves the right to assert additional grounds of invalidity, including under 35 U.S.C. §§ 102, 103, and 112, as warranted by further investigation, discovery, and the development of the record. This includes, but is not limited to, grounds of invalidity based on prior art, including publicly available information demonstrating that the functionality of the Violet Edge system was in use before the priority dates of the Asserted Patents.

**COUNT IX**
**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS 505/2SSS**

133. Wi-Tronix incorporates and realleges each allegation in paragraphs 1 through 35 above as though fully set forth herein.

134. Section 2SSS of the Illinois Consumer Fraud and Deceptive Business Practices Act makes it an unlawful practice for a person, in connection with the assertion of a United States patent, to send a written communication stating that an intended recipient or affiliated person is infringing or has infringed a patent and bears liability or owes compensation if, among other things, the communication fails to include "the factual allegations concerning the specific areas in which the intended recipient's or affiliated person's products, services, or technology infringed the patent or are covered by the claims in the patent." 815 ILCS 505/2SSS(b)(4)(C).

135. Wi-Tronix's customers are an "intended recipient" and Wi-Tronix is an "affiliated person" within the meaning of 815 ILCS 505/2SSS(a). Among other things, Wi-Tronix's customers have obtained Violet Edge systems and/or related services in the commercial market for use in connection with their railcar operations and not for resale, and BWE expressly identified Wi-Tronix's equipment and services as part of the technology allegedly infringing the Asserted

Patents.

136. BWE sent the Jaguar Demand Letter to a Wi-Tronix customer in connection with the assertion of infringement of the Asserted Patents. The Jaguar Demand Letter states that this customer infringes the Asserted Patents by using a Wi-Tronix product, asserts that Wi-Tronix has engaged in past unauthorized use, and demands that the customer either obtain a license from BWE or cease the allegedly infringing activities and provide compensation for past use.

137. The Demand Letter fails to provide concrete or accurate Wi-Tronix-specific factual allegations showing how Wi-Tronix's actual product and system, services, or technology perform numerous limitations of the Asserted Patents, as required by 815 ILCS 505/2SSS(b)(4)(C).

138. In particular, BWE's infringement allegations are premised centrally on information in Wi-Tronix's U.S. Patent No. 9,285,294 and sales and promotional materials relating to the Violet Edge system. Upon information and belief, BWE has not obtained, examined or analyzed an actual Violet Edge system device prior to alleging that the Violet Edge system infringes the Asserted Patents.

139. BWE's charts in the Jaguar Demand Letter likewise fail to correctly identify particular Wi-Tronix technologies that perform numerous claimed functions. Instead, the charts repeatedly rely on generalized assumptions and qualified formulations such as "on information and belief," and "support the inference," for example and equate broad categories of railcar-operational information or workflows with specific claim limitations without identifying concrete facts concerning the particular technology actually used by Wi-Tronix and its customers.

140. For example, with respect to the '273 Patent and '558 Patent, BWE does not identify particular Wi-Tronix technology that performs the claimed reference-data, coordinate-framework, normalization, movement-calculation, and MTMA-determination operations, but instead BWE equates generalized concepts as to how it believes the Violet Edge system functions, and attempts

incorrectly to compare those beliefs to the claims of the asserted '273 and '558 Patents.

141. With respect to the '914 Patent and '951 Patent, BWE similarly incorrectly equates its beliefs as to the functionality of the Violet Edge system with materially different claimed concepts such as "user activity," "surveillance mode," "user-defined response," a "user need for assistance, an accident, or a crime," and "first and second investigation processes," without correctly identifying facts showing that Wi-Tronix's actual technology performs those claimed functions. For example, BWE in the Demand Letter has failed to show that the limitation "a user-defined response to the user activity" describes a function of the Violet Edge system.

142. These deficiencies are not cured by BWE's inclusion of charts in the Demand Letter. Although the charts reproduce claim language and attempt to provide somewhat generalized descriptions of railcar industry systems, technologies, information and workflows, BWE does not provide concrete or accurate Violet Edge system-specific factual allegations showing how the Violet Edge system and related services, or technology perform numerous claimed limitations. Indeed, the Demand Letter expressly states: "Where Jaguar-specific public materials do not disclose the precise firmware routine or mathematical implementation used on a particular locomotive, the mappings use calibrated 'on information and belief' language rather than asserting undisclosed source-code details." As set forth previously in this Complaint, relevant comments BWE asserts based upon its "upon information and belief" are technically inaccurate and not "calibrated."

143. On information and belief, BWE's infringement assertions against Wi-Tronix's customers lack a reasonable factual basis and are objectively baseless. Upon information and belief, and based on the subject matter of the Jaguar Demand Letter, BWE's infringement theory rests centrally on how BWE believes the Violet Edge system functions. BWE's assertions in the Demand Letter clearly establish that BWE has never obtained or analyzed a physical Violet Edge

platform device prior to incorrectly alleging that the Asserted Patents are infringed by its customers' use of the Violet Edge system.

144. On information and belief, BWE asserts patent infringement against Wi-Tronix's customers in bad faith. Among other things, BWE sent its infringement accusations without performing sufficient due diligence to confirm the basic factual functionalization of the Violet Edge system. BWE's Jaguar Demand Letter relies repeatedly on qualified and generalized assumptions in place of Violet Edge system-specific facts, and BWE sent substantially similar enforcement demands to multiple participants in the railcar industry including customers of Wi-Tronix.

145. Accordingly, BWE's transmission of the Jaguar Demand Letter or similar demand letters to several Wi-Tronix customers constitutes an unlawful practice under 815 ILCS 505/2SSS(b)(4)(C).

146. As a direct and proximate result of BWE's unlawful practice, Wi-Tronix and its affected customers have incurred actual economic loss in investigating and responding to BWE's baseless patent infringement assertions and otherwise addressing the deficient Demand Letter, in an amount to be proven at trial.

147. Pursuant to 815 ILCS 505/10a, Wi-Tronix and its affected customers are entitled to recover their actual damages and such other relief as the Court deems proper and, if Wi-Tronix is the prevailing party, reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Wi-Tronix respectfully requests that this Court enter final judgment in its favor and against BWE as follows:

A. A declaratory judgment that Wi-Tronix and its customers for the Violet Edge platform system have not infringed and do not infringe, directly or indirectly, literally or under the doctrine of equivalents, any claim asserted by BWE against customers of Wi-Tronix under the

Asserted Patents;

B. A declaratory judgment that the claims asserted by BWE against customers of Wi-Tronix under the Asserted Patents are invalid under at least 35 U.S.C. § 101, and other provisions of U.S. Patent Law;

C. A permanent injunction that BWE may not institute patent infringement lawsuits and/or claims against Wi-Tronix and/or its customers for the Violet Edge platform system alleging infringement of one or more of the Asserted Patents, and requiring BWE to voluntarily dismiss, with prejudice, any lawsuit previously filed alleging that Wi-Tronix and/or any customer of Wi-Tronix has infringed one or more the Asserted Patents;

D. A judgment that BWE violated 815 ILCS 505/2SSS by sending the Jaguar Demand Letter, or a letter similar thereto, to Wi-Tronix's customers without providing the concrete Violet Edge platform system factual functionality, or a letter similar thereto, allegations required by 815 ILCS 505/2SSS(b)(4)(C) showing how Wi-Tronix's actual products, services, or technology allegedly infringe the Asserted Patents or otherwise are covered by their claims;

E. An award to Wi-Tronix and its affected customers of their actual damages resulting from BWE's violation of 815 ILCS 505/2SSS, in an amount to be determined at trial, together with such other relief as is authorized by the Illinois Consumer Fraud and Deceptive Business Practices Act;

F. An award to Wi-Tronix of its reasonable attorneys' fees and costs pursuant to 815 ILCS 505/10a;

G. A determination that this case is exceptional under 35 U.S.C. § 285 and an award to Wi-Tronix of its reasonable attorneys' fees pursuant to that statute;

H. An award to Wi-Tronix of its taxable costs and such pre-judgment and post-judgment interest as permitted by law; and

I. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Wi-Tronix demands a trial by jury on all issues so triable.

Dated:

Respectfully submitted,

/s/ Howard B. Rockman

Howard B. Rockman
Illinois ARDC No. 2361051
Mercedes V. O'Connor
Illinois ARDC No. 6311274
Rockman, Videbeck & O'Connor, LLC
1s376 Summit Ave., Court C
Oakbrook Terrace, Illinois 60181
Telephone: (630) 627-4552
Facsimile: (630) 627-2145
Email: rockman@rvoiplaw.com

*Attorneys for Plaintiff Wi-Tronix, LLC*

# VERIFICATION

I, Michael D. Heilmann, Executive Vice-President and Chief Operating Officer of Wi-Tronix, LLC hereby declare, under penalty of perjury that I have read the foregoing Complaint, know the facts of personal knowledge, and based upon knowledge imparted to me by developers and engineers at Wi-Tronix, LLC regarding the functionality of the Violet Edge platform system, to be true and correct, and that all statements made on information and belief are believed by me to be true.

Date: Nov-10-2026

DocuSigned by:

F0AAFCE38B8C4B9...

Michael D. Heilmann